UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DIONICIO DELAROSA REYES,

              Petitioner,

v.                                   Case No. 5:17-cv-231-Oc-39PRL

SECRETARY, DEPARTMENT
OF CORRECTIONS, and ATTORNEY
GENERAL, STATE OF FLORIDA,

              Respondents.

_____

**ORDER**

**I. Background**

    Petitioner, Dionicio Delarosa Reyes, through his attorney, is proceeding on a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1; Petition). Petitioner challenges his 2010 state court (Marion County) conviction for attempted first-degree murder with a firearm. See Petition at 1. He asserts four grounds: (1) trial court error in prohibiting him from calling a rebuttal/impeachment witness; (2) trial court error in instructing the jury on the elements of attempted voluntary manslaughter; (3) trial court error in denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion) as to his claim of ineffective assistance of counsel for counsel's failure to move to dismiss the charges under Florida's "Stand Your Ground" (SYG) law; and (4) trial court error in denying his

postconviction claim of ineffective assistance of counsel for counsel's failure to object to a flawed jury instruction. Id. at 5-10.

Respondents assert both procedural and merits-based defenses (Doc. 6; Resp.). The Court afforded Petitioner an opportunity to reply, see Order (Doc. 2), but Petitioner's counsel chose not to do so, see Docket. Thus, the Petition is ripe for review.

## II. Timeliness

Respondents concede Petitioner timely filed his Petition. See Resp. at 4. Accordingly, the Court accepts as undisputed that the Petition is timely.

## III. Evidentiary Hearing

Petitioner does not request an evidentiary hearing. Even if he had, upon review, the Court can "adequately assess [Petitioner's] claim[s] without further factual development." See Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). As such, an evidentiary hearing is not warranted.

## IV. Governing Legal Standards

### A. Habeas Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "prescribes a deferential framework for evaluating issues previously decided in state court," Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020), limiting

a federal court's authority to award habeas relief. See 28 U.S.C. § 2254. See also Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

When a state court has adjudicated a petitioner's claim on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of that claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). See also Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-01 (11th Cir. 2019), cert. denied, No. 19-6918, 2020 WL 1325907 (U.S. Mar. 23, 2020). To obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent, not dicta. Harrington v. Richter, 562 U.S. 86, 102 (2011).

A federal district court must give appropriate deference to a state court decision on the merits. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). To qualify as an adjudication on the merits, the state court need not issue an opinion explaining its rationale. Id. Where the state court's adjudication is unaccompanied by an

explanation, the district court should presume the unexplained decision adopted the reasoning of the lower court:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Id. Under the federal habeas statute, a state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The AEDPA standard is intended to be difficult for a petitioner to meet. Harrington, 562 U.S. at 102. A showing of "clear error will not suffice." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017). If some fair-minded jurists could agree with the state court's decision, habeas relief must be denied. Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1351 (11th Cir. 2019), cert. denied, 140 S. Ct. 394 (2019). Therefore, unless the petitioner shows "the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," there is no entitlement to habeas relief. Id. at 1349 (alteration in original). A district court's obligation is to "train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Id. (citing Wilson, 138 S. Ct. at 1191-92).

## B. Exhaustion/Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available. 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989). To properly exhaust federal habeas claims, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). See also Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas review.

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012).

Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner "can show cause for the default and actual prejudice

resulting from the alleged constitutional violation." <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[1] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Ward</u>, 592 F.3d at 1157 (quoting <u>Carrier</u>, 477 U.S. at 496). "'This exception is exceedingly narrow in scope,' however, and requires proof of actual innocence, not just legal innocence." <u>Id.</u> (quoting <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001)).

---

[1] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

## C. Ineffective Assistance of Counsel

To demonstrate trial counsel was ineffective, a habeas petitioner must satisfy a rigorous two-prong test by showing (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). See also Yarborough v. Gentry, 540 U.S. 1, 5 (2003). There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)).

The performance prong is highly deferential, requiring a "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689). Accordingly, "to show that counsel's performance was unreasonable, the petitioner must establish that no competent counsel would have taken the action that his counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001). (emphasis in original). The prejudice prong requires a showing that there is a reasonable probability that, but for counsel's

deficiencies, the result of the proceeding would have been different. Strickland, 466 U.S. at 695.

When the "strong presumption" standard of Strickland is applied "in tandem" with the highly deferential AEDPA standard, a review of the state court's determination as to the "performance" prong is afforded double deference. Richter, 562 U.S. at 105. As such, the question for a federal court is not whether trial counsel's performance was reasonable, but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," a federal court may not disturb a state-court decision denying the claim. Id. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## V. Analysis

### A. Ground One

First, Petitioner asserts the trial court erred in denying his request to call Deputy Jacob as a witness to rebut the testimony of Paul Straight. Petition at 5. Respondents argue Petitioner did not exhaust this ground for relief because, on direct appeal, Petitioner "did not alert the state court that he was specifically raising a federal constitutional claim." Resp. at

7.[2] Additionally, Respondents argue, ground one presents solely a state evidentiary issue. Id. at 13-14.

Through counsel, Petitioner appealed his conviction to Florida's Fifth District Court of Appeal (Fifth DCA). Exs. H, I. The Fifth DCA affirmed Petitioner's conviction per curiam, Ex. K, and issued its mandate, Ex. L.

Initially, to the extent Petitioner urges that the state court erred under Florida law when it ruled Petitioner could not call a rebuttal witness, his claim is not cognizable on federal habeas review. "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1985) ("[A] federal habeas corpus case is not a vehicle to correct evidentiary rulings."); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (noting that federal courts, on habeas review, "are not

_____

[2] Petitioner concedes he did not exhaust his state remedies as to ground one, though not for the reason Respondents offer. He says he failed to exhaust his remedies because "[t]he factual testimony provided at the evidentiary hearing did not support a good faith basis to raise the issue on appeal." Petition at 5. It appears Petitioner is referencing the appeal of his Rule 3.850 Motion, not his direct appeal. Respondents assert Petitioner failed to exhaust this claim because he did not present it to the appellate court on direct appeal.

empowered to correct erroneous evidentiary rulings"). "Where a claim of constitutional magnitude is lacking, the federal court in the habeas corpus context will not review a state trial court's actions concerning the admissibility of evidence." Nelson v. Sec'y, Fla. Dep't of Corr., 610 F. Supp. 2d 1323, 1332 (M.D. Fla. 2009). Thus, Petitioner's claim that the trial court's evidentiary ruling was incorrect is not cognizable.

Additionally, to the extent ground one raises a federal constitutional challenge, this claim is unexhausted because Petitioner's counsel did not present the federal nature of this claim to the Fifth DCA on direct appeal. With respect to whether a federal habeas petitioner fairly presented a federal claim to the state court, the Eleventh Circuit has articulated the following standard:

> In order to be exhausted, a federal claim must be fairly presented to the state courts. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). "It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Kelley[3], 377 F.3d at 1343-44 (citing Picard, 404 U.S. at 275-76, 92 S.Ct. at 512 and Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982)). Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner

---

[3] Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317 (11th Cir. 2004).

to present the state courts with the same claim he urges upon the federal courts." *Picard*, 404 U.S. at 275, 92 S.Ct. at 512 (citations omitted). While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Kelley*, 377 F.3d at 1344-45 (citing *Picard*, 404 U.S. at 277, 92 S.Ct. at 513).

*McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).

In some circumstances, identifying a claim as "federal" or referencing the federal law upon which the claim relies may be enough. *Id.* (citing *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). However, "[b]riefing an issue as a matter of state law . . . is not sufficient to exhaust a federal claim of the equivalent ground." *Nelson*, 610 F. Supp. 2d at 1332. A district court should apply "common sense" when determining whether a petitioner "afford[ed] the state courts a meaningful opportunity to consider allegations of legal error . . . ." *McNair*, 416 F.3d at 1302. To afford a state court a meaningful opportunity to consider a claim, a habeas petitioner must "do more than scatter some makeshift needles in the haystack of the state court record." *Id.* at 1303 (quoting *Kelley*, 377 F.3d at 1345). In the state court, a petitioner must have "plainly defined" the federal question. *Kelley*, 377 F.3d at 1345. "Oblique references which hint that a

theory may be lurking in the woodwork will not turn the trick." <u>Id.</u>

In his appellate brief, Petitioner framed this claim as a state evidentiary issue. He claimed, "the lower court erred in prohibiting the defense from calling a critical rebuttal/impeachment witness." Ex. I at 12. In support of his argument on appeal, Petitioner relied upon a provision of the Florida Evidence Code, which prohibits evidence of a prior inconsistent statement unless the witness, after being questioned about the prior statement, denies having made it "or does not distinctly admit making the prior inconsistent statement." <u>Id.</u> (quoting Fla. Stat. § 90.614(2)). He also cited Florida case law and a Florida treatise. <u>Id.</u> at 13.

In a parenthetical citation, Petitioner referenced a United States Supreme Court decision, <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973). <u>Id.</u> Petitioner's main citation was to a Florida appellate court decision, <u>Mateo v. State</u> 932 So. 2d 376, 379 (Fla. 2d DCA 2006). Petitioner's counsel quoted from <u>Mateo</u>, which cited <u>Chambers</u>. In his appellate brief, Petitioner's counsel wrote:

> <u>Florida law is clear</u> that "where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission." <u>Mateo v. State</u>, 932 So. 2d 376, 379 (Fla. 2d DCA 2006) (citing <u>Rivera v. State</u>, 561 So. 2d 536, 539 (Fla. 1990)[)]. This principle is based, in part, on the United States Supreme Court's holding that "[f]ew rights are more

12

> fundamental than that of an accused to present
> witnesses in his own defense." <u>Mateo</u>, <u>id.</u>
> [sic] (citing <u>Chambers v. Mississippi</u>, 410
> U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d
> 297 (1973)).

<u>Id.</u> at 13 (emphasis added).

Despite an indirect reference to a Supreme Court decision, Petitioner argued the trial court improperly applied Florida Statutes section 90.614 in ruling the witness's prior statement was inadmissible. He asserted the State's witness did not "distinctly admit" making the prior statement, and thus, the trial court's ruling to the contrary "was an abuse of discretion and a denial of [his] due process rights." <u>Id.</u> at 15, 16. In its answer brief, the State responded to the issue as Petitioner presented it—as an alleged evidentiary error. Ex. J at 4-7. Petitioner's counsel did not file a reply brief.

While Petitioner parenthetically cited <u>Chambers</u> and referenced the phrase "due process," Petitioner did not rely on federal constitutional principles, nor did he "plainly define[]" a federal claim for the appellate court's consideration. <u>See</u> <u>Kelley</u>, 377 F.3d at 1345. Indeed, Petitioner's citation to <u>Chambers</u> appears to have been a weak attempt to avoid over-quoting the <u>Mateo</u> decision, not a deliberate decision to invoke constitutional principles on appeal. <u>See</u> <u>Mateo</u>, 932 So. 2d at 379.

Even if Petitioner's citation to <u>Chambers</u> was a deliberate attempt to invoke constitutional principles, he could not have

expected the appellate court to discover a potential federal claim "lurking in the woodwork." See Kelley, 377 F.3d at 1345. Notably, the Mateo court did not discuss or apply Chambers or federal constitutional principles in its decision. Mateo, 932 So. 2d at 381. Additionally, the Chambers decision provided no apparent support for Petitioner's argument on appeal. In Chambers, the Court held the defendant was denied his constitutional right to confront the witnesses against him because the trial court denied his request to cross-examine his own witness whose testimony was "damning" to his defense. 410 U.S. at 1045-46.

On appeal, Petitioner did not argue he was denied the right to confront witnesses against him, nor did he argue he was denied a fair trial. Ex. I at 15. Rather, he argued the trial court abused its discretion in finding that Mr. Straight could not be impeached under the Florida Evidence Code because Mr. Straight did not deny having made the prior statement.[4] Id. Thus, Petitioner's indirect

---

[4] At trial, Mr. Straight testified that he saw Petitioner approach the victim, who had just parked and exited his own truck. Ex. B at 233. Mr. Straight said the victim's toolbox, which was in the back of the victim's truck, was open, and the victim was looking inside the toolbox. Id. at 234, 236. Mr. Straight testified at trial that he did not think he saw the victim attempting to retrieve a hammer out of his open toolbox. Id. at 234. However, on cross-examination, he conceded he may have told Deputy Jacob, immediately after the shooting, that he saw the victim attempting to retrieve a hammer. Id. at 235. He stated, "I don't remember saying that, . . . but if that's what [Deputy Jacob] has in my statement then that's what I said." Id. Because Mr. Straight did not deny making the prior statement, the judge denied defense

reference to <u>Chambers</u> constitutes the metaphoric scattering of a needle in a haystack. <u>See</u> <u>Hartge v. McDonough</u>, 210 F. App'x 940, 943 (11th Cir. 2006) (holding the petitioner's single reference to a fair trial and one citation to a Supreme Court decision was "no more than the scattering of '<u>some makeshift needles in the haystack of the state court record</u>'" (quoting, with emphasis, <u>McNair</u>, 416 F.3d at 1303)).

Because Petitioner did not fairly present a federal claim on direct appeal, ground one is unexhausted and procedurally defaulted, and Petitioner fails to show cause for the default or prejudice from the alleged constitutional violation. Thus, Petitioner is not entitled to relief on ground one.

### B. Ground Two

Second, Petitioner asserts the lower court "committed fundamental error in instructing the jury on the elements of Attempted Voluntary Manslaughter." Petitioner at 7. Respondents maintain Petitioner did not exhaust this claim and presents purely a state-law issue. Resp. at 9, 14.

On direct appeal, Petitioner framed the issue as follows: "The lower court committed fundamental error in instructing the jury on the elements of attempted voluntary manslaughter." Ex. I at 16. Petitioner cited solely Florida case and statutory law in

---

counsel's motion to call Deputy Jacob as a rebuttal witness. <u>Id.</u> at 321.

support of his claim. Id. at 17-20. And the topic sentence for his discussion of legal authority indicated his claim relied on the application of state law only: "Florida law on the attempted voluntary manslaughter instruction." Id. at 17. Thus, because Petitioner did not fairly present a federal claim on direct appeal, ground two is unexhausted and procedurally defaulted, and Petitioner fails to show cause for the default or prejudice from the alleged constitutional violation.

Additionally, this purely state-law issue is not cognizable on federal habeas review. The Supreme Court has emphasized "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Even if the trial court incorrectly instructed the jury on the elements of attempted voluntary manslaughter, such an error is not a basis upon which to seek federal habeas review. See id. (holding a deficient jury instruction "is not a basis for habeas relief" absent a showing that the instruction itself was applied in a way that violates the Constitution). See also Joseph v. Sec'y, Dep't of Corr., 567 F. App'x 893, 894 (11th Cir. 2014) (holding the petitioner failed to raise a constitutional claim because he argued only that "the trial court erred when it instructed the jury that intent to kill was an element of the lesser-included crime of manslaughter").

Petitioner does not argue the jury applied the flawed jury instruction in a way that violates the Constitution. <u>See</u> Petition at 7. He merely argues the instruction was incorrect under Florida law. <u>Id.</u> As such, he fails to present a cognizable claim for this Court's review.

For these reasons, Petitioner is not entitled to relief on ground two.

### C. Ground Three

Third, Petitioner asserts the postconviction court erred in finding his trial counsel was not ineffective for counsel's failure to move to dismiss the charges against him under Florida's SYG law. Petition at 8 (citing Fla. Stat. § 776.032). Other than asserting that he had a lawful right to be where he was at the time of the shooting and that the victim had a reputation for violence, Petitioner does not explain why his counsel was ineffective under the highly deferential AEDPA/<u>Strickland</u> standard. <u>See</u> <u>id.</u>

Respondents counter that Petitioner could not have benefited from SYG immunity because he was a convicted felon in possession of a gun at the time of the shooting. Resp. at 20. Respondents also argue Petitioner fails to allege any deficient performance by his trial counsel prejudiced his defense. <u>Id.</u> at 21.

Petitioner raised this claim in his Rule 3.850 Motion.[5] Ex. M at 11. After conducting an evidentiary hearing, Ex. P, the postconviction court found the claim without merit, Ex. Q at 6. The Fifth DCA affirmed per curiam, Ex. U, and issued its mandate, Ex. V. To the extent the Fifth DCA affirmed the postconviction court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. See Wilson, 138 S. Ct. at 1194. As such, the Court will "look through" the unexplained opinion to the postconviction court's order on Petitioner's Rule 3.850 Motion. Id.

The postconviction court concluded Petitioner's counsel was not ineffective because Petitioner "was not eligible to claim the [SYG] immunity" under Florida Statutes section 776.013(3) given Petitioner was engaged in an "unlawful activity" at the relevant time. Ex. Q at 24. The court noted Petitioner's counsel testified at the evidentiary hearing that "he reviewed the law [and] did not

---

[5] Respondents contend Petitioner's claim is partially unexhausted because in his Rule 3.850 Motion, he challenged his counsel's failure to move to dismiss the charges against him before trial. Resp. at 9. According to Respondents, Petitioner did not reference his counsel's failure to move for a dismissal of the charges during trial, as he does in his Petition. Id. The Court finds Petitioner exhausted this claim because he argued in his Rule 3.850 Motion that his counsel was ineffective for failing to raise the SYG defense, Ex. M at 11, and he appealed the denial of his Rule 3.850 Motion, Ex. R.

believe the [Petitioner] was eligible to claim the immunity because he was a convicted felon." Id.

Petitioner is unable to establish the state court's adjudication of the claim was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. In its order denying Petitioner's Rule 3.850 Motion, the postconviction court set forth the applicable two-prong Strickland test. Id. at 1-2. The record demonstrates the postconviction court properly applied the Strickland standard. See Card v. Dugger, 911 F.2d 1494, 1500 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit.").

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, Petitioner fails to assert facts or argument showing that "no competent counsel would have taken the action that his counsel did take." See Grayson, 257 F.3d at 1216 (emphasis omitted). Petitioner was represented by an attorney, Jack Maro, during his Rule 3.850 Motion proceedings. At the evidentiary hearing, Mr. Maro questioned Petitioner's trial counsel about SYG immunity, which Mr. Maro acknowledged was a relatively new law. Ex. P at 14.

Mr. Maro asked counsel why he did not move to dismiss the charges under the SYG law. Id. Petitioner's trial counsel responded

that he understood the law at the time (in 2008) extended immunity only if the person using force was not a convicted felon. Id. at 16. He testified as follows:

> I think originally as written, I don't know if [Petitioner] was qualified for it as it was originally written. And I think they went back and made it so that could [sic] anybody could file it. But I want to say originally, I thought convicted felons weren't eligible for it or something to that effect. And I mean I probably could have filed something to test the law at that point, but I didn't because I read the law and I saw what the legislature wrote, I guess.

Id. at 15-16 (emphasis added).

Petitioner does not say why his counsel's assessment, which counsel said was informed by his review and understanding of the law at the time, should not be afforded deference. And, upon review of the relevant law at the time, the Court concludes counsel's decision was reasonable under the circumstances. See Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) ("The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.").

Florida's SYG law was enacted in 2005 under Florida Statutes chapter 766. The provision that grants immunity for the use of force is found in section 776.032. That provision provides, "A person who uses . . . force as permitted in s. 776.012, s. 776.013,

or s. 776.031 is justified in such conduct and is immune from criminal prosecution . . . ." Fla. Stat. § 776.032. Per the plain language of the statute, a person who uses force is entitled to immunity under section 776.032 only if his conduct was permitted under one of three other provisions. See, e.g., Little v. State, 111 So. 3d 214 (Fla. 2d DCA 2013) (explaining the history of the SYG law and the interplay between the statutory provisions comprising the law).

Based on the facts of Petitioner's case, the provisions that potentially could have applied are 776.012 and 776.013(3).[6] In 2008, when Petitioner was charged, both sections 776.012 and 776.013(3) authorized the use of force if the person using force "reasonably believ[ed] that such force [was] necessary" to prevent "imminent death or great bodily harm," in the case of section 776.012, or to "prevent death or great bodily harm," in the case of section 776.013. See Fla. Stat. §§ 776.012(1), 776.013(3) (2005). The main difference between the two provisions, as relevant to Petitioner's case, was that, under the 2005 version of the SYG law, section 776.013(3) extended immunity only if the person using force was "not engaged in unlawful activity." See Fla. Stat. §

---

[6] Section 776.031 pertains to the use of force in the protection of property. See Fla. Stat. § 776.031.

776.013(3) (2005). At the time, section 776.012 did not expressly include such a limitation.[7]

In his Petition, Petitioner does not explain why the postconviction court's ruling was incorrect or his attorney ineffective. It is uncontradicted that Petitioner was a convicted felon when he shot the victim. Ex. B at 325-26, 637. Thus, the postconviction court correctly concluded Petitioner could not have benefitted from immunity by application of section 776.013(3) because Petitioner was engaged in unlawful activity at the time of the shooting (being a convicted felon in possession of a firearm).

Petitioner's argument only becomes clear upon review of his brief on appeal. Ex. S. On appeal, Petitioner argued, through counsel, that his trial counsel "was not properly versed [in] or miscalculated the law." Id. at 19. According to Petitioner's appellate counsel, his trial counsel failed to appreciate that section 766.012 did not include the "unlawful activity" exception unlike section 766.013(3). Id. Petitioner's appellate counsel noted the postconviction court, too, failed to appreciate the distinction. Id. Petitioner's counsel encouraged the appellate

---

[7] The legislature amended the SYG law in 2014. Section 776.012 now includes the limiting language included in section 776.013(3). Section 776.012 now provides, "A person who uses . . . deadly force . . . does not have a duty to retreat and has the right to stand his or her ground if the person using . . . the deadly force is not engaged in a criminal activity." Fla. Stat. § 776.012(2) (2020) (emphasis added).

court to review two cases "to fully understand" the subtle difference between sections 776.012 and 766.013(3). <u>Id.</u> at 20 (citing <u>Miles v. State</u>, 162 So. 3d 169 (Fla. 5th DCA 2015); <u>Dorsey v. State (Dorsey II)</u>, 149 So. 3d 144 (Fla. 4th DCA 2014)).

Contrary to Petitioner's argument in his appellate brief, it does not appear his trial counsel was misinformed or "not properly versed" in the law. <u>See</u> Ex. S at 19. In fact, Petitioner's counsel testified at the evidentiary hearing that he considered whether he had a good-faith argument to assert SYG immunity and concluded, based on his understanding of the law at the time, that such an argument would have been meritless. Ex. P at 15-16.

Upon review of the applicable law at the time, Petitioner's counsel's understanding of the SYG law was reasonable. The 2005 version of section 766.013(3), which courts commonly referred to as <u>the</u> "Stand Your Ground" law, provided as follows:

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force . . . .

Fla. Stat. § 766.013(3) (2005). <u>See, e.g.,</u> <u>State v. Hill (Hill I)</u>, 95 So. 3d 434, 435 (Fla. 4th DCA 2012) (describing the SYG law as being codified in section 766.013(3), which includes the "unlawful activity" exception); <u>Dorsey v. State (Dorsey I)</u>, 74 So. 3d 521, 527 (Fla. 4th DCA 2011) (same).

The 2005 version of section 776.012 provided as follows:

[A] person is justified in the use of deadly force and does not have a duty to retreat if:

(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or

(2) Under those circumstances permitted pursuant to s. 776.013.

Fla. Stat. § 766.012 (2005). This provision included no express "unlawful activity" exception, though some practitioners and courts interpreted section 766.012 as engrafting onto it, by reference to section 766.013, the "unlawful activity" exception contained in that provision. In fact, Florida appellate courts eventually started to note and address the controversy the 2005 law sparked regarding whether section 776.012, by reference to section 776.013, incorporated the "unlawful activity" exception. See, e.g., Hill v. State (Hill II), 143 So. 3d 981, 984 (Fla. 4th DCA 2014). See also Brown v. State, 135 So. 3d 1160, 1160 n.1, 1162 (Fla. 4th DCA 2014).

Given the controversy engendered by the 2005 law, in 2013, the Second DCA certified a question to the Florida Supreme Court, which pinpointed a perceived inter-district conflict. See Little, 111 So. 3d at 222-23. In Little, the court held the defendant was entitled to immunity under section 776.012(1) even though his use of force was not permitted under section 776.013(3) because the

24

"unlawful activity" exception applied. Id. at 222. The Second DCA noted that a Fourth DCA decision, Hill I, could be read broadly as holding the opposite—"that a defendant who is engaged in an unlawful activity is not entitled to immunity under section 776.032(1)," which incorporates by reference section 776.012. Id. (emphasis added).

Recognizing that its decision conflicted with the Fourth DCA's Hill I decision, the Second DCA certified the following question to the Florida Supreme Court: "Is a defendant who establishes . . . that his use of deadly force is permitted in section 776.012(1), Florida Statutes (2009), entitled to immunity under section 776.032(1) even though he is engaged in an unlawful activity at the time he uses the deadly force?"[8] Id. Significantly, the court noted that it could find no case law addressing this specific issue. Id.

After the Little decision, there was a flurry of case law clarifying that sections 776.012 and 776.013(3) provide distinct avenues through which to invoke immunity under section 776.032, and that only one section conditioned immunity on a person's lawful conduct.[9] The Fourth DCA even issued a decision to "eliminate any

---

[8] The Florida Supreme Court did not exercise its discretion to resolve the perceived conflict.

[9] In addition to the decisions discussed in this Order, see, for example, Miles, 162 So. 3d at 171-72 (agreeing with the Second, Third, and Fourth DCAs that a defendant who is unable to proceed

perceived conflict between [the DCA's] positions on this issue." Hill II, 143 So. 3d at 983 n.2. The Fourth DCA receded from its statement in Hill I "that a felon in possession of a firearm cannot claim immunity 'under the Stand Your Ground law' because the statement unintentionally went beyond the statutory provision at hand – section 766.013(3)." Id. at 985 (emphasis in original). See also Brown, 135 So. 3d at 1160 n.1, 1162 (noting the imprecise common parlance "Stand Your Ground" should be avoided because it caused confusion as "illustrated by the certified conflict" presented in the Little decision).

Upon careful review of case law interpreting the pre-2014 SYG law, and of the law itself, Petitioner fails to demonstrate his trial counsel's performance was deficient under Strickland simply because counsel failed to know in 2008 what Florida appellate courts did not make clear until at least 2014. The two cases Petitioner cited in his appellate brief certainly illuminate the issue and eviscerate any doubt whether the 2005 version of section 776.012 incorporated the "unlawful activity" exception expressly included in section 776.013(3). However, Miles and Dorsey II were

---

under section 776.013(3) because of the "unlawful activity" prohibition may proceed under the pre-2014 version of section 776.012(1)), and Garrett v. State, 148 So. 3d 466, 471 (Fla. 1st DCA 2014) (citing with approval Little and Hill II in rejecting the State's argument that the self-defense privilege extended under all provisions of the SYG law is "reserved for law-abiding citizens only").

decided many years after Petitioner was arrested and tried.[10] As discussed, at least before 2013, the apparent understanding of the SYG law was that immunity was unavailable to convicted felons in possession of guns.

Even if Petitioner's trial counsel could have argued in 2008 that section 776.012 should apply regardless of a defendant's unlawful activity, under the circumstances, his failure to do so was reasonable. See Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). The Strickland standard does not demand criminal defense attorneys be legal trailblazers or statutory interpretation scholars. Bates v. Sec'y, Fla. Dep't of Corr., 768 F.3d 1278, 1295 (11th Cir. 2014) ("[The Strickland] test 'has nothing to do with what the best lawyers would have done. . . . [or] even what most good lawyers would have done.").

Accordingly, Petitioner fails to demonstrate his trial counsel's performance was deficient. See Brown v. United States, 219 F. App'x 917, 918 (11th Cir. 2007) ("Unless the petitioner can rebut the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' he cannot establish that counsel's performance was constitutionally

_____

[10] Petitioner was charged by Information on November 13, 2008, see Ex. A, and his trial began in May 2010, see Ex. B.

deficient."). But assuming counsel's performance was deficient, Petitioner is unable to demonstrate prejudice. Other than by speculation and conjecture, Petitioner does not assert a motion to suppress his charges under the SYG law, as interpreted in 2008, would have succeeded. Notably, the postconviction court agreed with trial counsel's assessment of the law, concluding that section 776.013(3)'s "unlawful activity" exception would have barred Petitioner from seeking SYG immunity.[11]

For the above reasons, Petitioner is not entitled to relief on ground three.

### D. Ground Four

Fourth, Petitioner asserts the postconviction court erred in denying his ineffective assistance of counsel claim relating to a jury instruction. Petition at 10. Petitioner states his trial counsel did not object to a "flawed Standard Jury Instruction of Attempted Voluntary Manslaughter." Id. Petitioner asserts the Florida Supreme Court, the month before his trial, held the

---

[11] Ironically, Petitioner's imprecise nomenclature in his Rule 3.850 Motion illustrates the confusion engendered by the 2005 version of the SYG law. In his Rule 3.850 Motion, Petitioner simply asserted he was entitled to immunity under the "Stand Your Ground" law, which he cited by reference to the overarching provision, section 766.032. See Ex. M at 11. In his three-sentence argument, Petitioner made no reference to, or distinction between, sections 776.012 or 776.013(3). Id.

standard jury instruction for attempted voluntary manslaughter was "inappropriate." Id.

Petitioner raised this claim as ground four in his Rule 3.850 Motion. Ex. M at 11. The postconviction court found Petitioner was not entitled to relief. Ex. Q at 6-7. The Fifth DCA affirmed per curiam. Ex. U. To the extent the Fifth DCA affirmed the postconviction court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. See Wilson, 138 S. Ct. at 1194. As such, the Court will "look through" the unexplained opinion to the postconviction court's order on Petitioner's Rule 3.850 Motion. Id.

In its order denying Petitioner's Rule 3.850 Motion, the postconviction court found trial counsel was not deficient because the Florida Supreme Court's decision, issued before the trial, "did not become final until June 28, 2010 [after Petitioner's trial], when a motion for rehearing was denied." Ex. Q at 7. The postconviction court noted the law in effect at the time was that stated in the Fifth DCA case Barton v. State, 507 So. 2d 638 (Fla. 5th DCA 1987), with which the jury instruction complied. Id. The court concluded as follows:

> Because the jury instruction given at [Petitioner's] trial was proper, given the law at the time of the [Petitioner's] trial, the Court finds that [trial counsel] was not ineffective in failing to object to the

29

> attempted voluntary manslaughter instruction.
> … Here, there was no deficient performance …
> and the [Petitioner] has failed to establish
> that there was a reasonable probability a
> different instruction would have been given to
> the jury had [counsel] objected.

Id.

Petitioner's counsel does not explain why the postconviction court's adjudication of the claim was contrary to or an unreasonable application of Strickland. See Petition at 10. Nor does counsel address either Strickland prong. Id. As such, Petitioner is unable to establish the state court's adjudication of the claim was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.[12] In its order denying Petitioner's Rule 3.850 Motion, the postconviction court set forth the applicable two-prong Strickland test. Id. at 1-2. The record demonstrates the postconviction court properly applied the Strickland standard.

Nevertheless, even if the state court adjudication of this claim is not entitled to deference, and assuming counsel's performance was deficient, Petitioner fails to demonstrate prejudice. Petitioner was charged with attempted first-degree

---

[12] To the extent Petitioner asserts the improper instruction amounts to trial court error, his claim is not cognizable on federal habeas review. See Joseph, 567 F. App'x at 894.

murder, Ex. A, which requires the State to prove Petitioner "did some act underlined intended to cause the death of [the victim]." Ex. C (emphasis added). The jury found Petitioner guilty as charged. Ex. D.

Petitioner contests not the jury instruction for attempted first-degree murder, but for the lesser-included offense of attempted voluntary manslaughter. See Petition at 10. In pertinent part, the trial judge charged the jury as follows:

> To prove the crime of Attempted Voluntary Manslaughter, the State must prove the following element beyond a reasonable doubt:
>
> [Petitioner] committed an act, which was intended to cause the death of [the victim] and would have resulted in the death of [the victim] except that someone prevented [Petitioner] from killing [the victim] or he failed to do so.

Ex. C. (emphasis added).

Petitioner maintains his attorney should have objected to the attempted voluntary manslaughter instruction because, the month before his trial, the Florida Supreme Court issued a decision holding "intent to kill" is not an element of the crime of manslaughter. See Petition at 10; Ex. S at 28 (citing Montgomery v. State, 39 So. 3d 352 (Fla. 2010)). Assuming the reference to an intent to cause death was incorrect, the same instruction informed the jury that a premeditated intent to cause death is not an

element of the crime of attempted voluntary manslaughter. Ex. C.
The instruction included the following additional language:

> In order to convict of attempted
> voluntary manslaughter[,] it is not necessary
> for the State to prove that the [Petitioner]
> had a premeditated intent to cause death, only
> an intent to commit an act which caused death.

Id.

To the extent the jurors were confused as to whether intent
to cause death was an element of attempted voluntary manslaughter,
any such confusion had no impact on the outcome of the trial. The
jury found Petitioner acted with an intent to kill the victim, as
is evident from the verdict for attempted first-degree murder. See
Ex. D. Accordingly, even if Petitioner's counsel should have
objected to the standard jury instruction, Petitioner fails to
demonstrate a reasonable probability that, but for counsel's
deficiencies, the result of the proceeding would have been
different. See Strickland, 466 U.S. at 695. Petitioner's implicit
suggestion to the contrary is not only vague but speculative. Thus,
Petitioner is not entitled to relief on ground four.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition for Writ of Habeas Corpus (Doc. 1) is
**DENIED.**

2.  This action is **DISMISSED WITH PREJUDICE.**

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[13] The **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of June 2020.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record

---

[13] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.